UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK LAFTAVI,

                                  Plaintiff,

v.                                                     Case # 22-CV-6002-FPG

                                                                            DECISION AND ORDER

STATE UNIVERSITY OF NEW YORK, et al.,

                                  Defendants.

## INTRODUCTION

Plaintiff Mark Laftavi alleges that Defendants Mantosh Dewan, Robert Cooney, and "John Doe" conspired with his employer, the State University of New York ("SUNY"), to terminate his employment from SUNY Upstate Medical University ("SUNY Upstate") as retaliation for his protected speech.  *See* ECF No. 1.  Currently before the Court is the Named Defendants'[1] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 13.  Plaintiff opposes the motion, ECF No. 17, and the Named Defendants have filed their reply.  ECF No. 18.  For the following reasons, the Named Defendants' motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 678.  In considering the plausibility of a

---

[1] The Court refers to the named defendants—Dewan, Cooney, and SUNY—collectively as "the Named Defendants."

claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## BACKGROUND

The following facts are taken from the complaint, unless otherwise noted. Plaintiff is an "internationally renowned transplant and general surgeon." ECF No. 1 ¶ 5. At some unidentified point, Rainer W.G. Gruessner, the Chief of the Department of Transplant Surgery at SUNY Upstate, recruited Plaintiff to join SUNY Upstate. At that time, SUNY Upstate's transplant program had "below average outcomes." *Id.* ¶ 12. In February 2016, Plaintiff began working for SUNY Upstate and University Surgical Associates, LLP ("USA, LLP") as a transplant surgeon and "Director of Pancreas Transplant Program." *Id.* ¶ 10. Plaintiff's employment was governed by a six-year employment contract.[2] *Id.* Cooney—a professor at SUNY Upstate and the managing partner of USA, LLP—executed Plaintiff's employment contract on behalf of SUNY Upstate and USA, LLP. *Id.* Plaintiff alleges that he "outperformed expectations" during his first year of employment and helped to rehabilitate SUNY Upstate's transplant program. *Id.* ¶ 13.

In May 2017, Gruessner left SUNY Upstate and accepted a position at SUNY Downstate Health Sciences University ("SUNY Downstate"), which had "one of the worst [transplant programs] in the country." ECF No. 1 ¶ 14. Plaintiff was elevated to the role of Interim Chief of

---

[2] The Named Defendants included a copy of the original agreement with their motion to dismiss. *See* ECF No. 13-1 at 9-26. Because the terms of that agreement do not bear materially on the Court's resolution of the Named Defendants' motion, the Court need not decide whether it would be appropriate to consider the document at this juncture.

2

Transplant Surgery upon Gruessner's departure.  Soon thereafter, however, Gruessner began encouraging Plaintiff to "join him at SUNY Downstate to replicate the success they shared" at SUNY Upstate.  *Id.* ¶ 15.  In October 2017, SUNY Downstate offered Plaintiff the position of Director of Pancreas Transplant Surgery, which Plaintiff accepted.  On October 31, 2017, Plaintiff submitted a notice of resignation to Cooney.

Cooney did not react well to Plaintiff's resignation.  Fearful that "without [Plaintiff's] skill and efforts," the transplant program at SUNY Upstate would "begin to fail again," Cooney threatened Plaintiff with legal action and penalties if he broke his employment contract.  *Id.* ¶ 17.  Cooney was also "infuriated" with Gruessner, believing that Gruessner was interfering with SUNY Upstate's transplant program.  *Id.* ¶ 18.  In response to Gruessner's overtures, officials at SUNY Upstate, on the one hand, offered additional monetary and other incentives to Plaintiff, and on the other hand, convinced SUNY Downstate's president to rescind Plaintiff's new employment offer.  This strategy succeeded: SUNY Downstate rescinded its offer, and Plaintiff accepted the additional incentives and continued his employment at SUNY Upstate.  The new incentives were memorialized in a December 2017 "Retention Letter."  *Id.* ¶ 19.  Over the next several years, Plaintiff continued to develop and strengthen SUNY Upstate's transplant program.

While working at SUNY Downstate, Gruessner came under "increased resistance and intense scrutiny" by senior administrators for publicly bringing to light "institutional failures [at SUNY Downstate] that threatened the health and safety of its patients."  ECF No. 1 ¶ 28.  After further conflict between Gruessner and SUNY Downstate, SUNY Downstate ultimately retaliated against him by revoking his medical staff privileges.  The stated grounds for the revocation were concerns over Gruessner's "patient care" and "allegations of disruptive behavior, comportment

and unprofessionalism." *Id.* ¶ 32. Gruessner internally appealed that decision to an "Ad Hoc Committee" of SUNY Downstate physicians and surgeons.

To challenge the accusations of substandard medical treatment, Gruessner solicited opinions from "several leading transplant surgeons." *Id.* ¶ 34. At Gruessner's request, Plaintiff provided a written statement to the Ad Hoc Committee, in which he "gave his independent evaluation as to whether [] Gruessner met the standard of care in those cases isolated by SUNY Downstate for which [] Gruessner stood accused."[3] *Id.* ¶ 37. Plaintiff's statement was "supportive of [] Gruessner's treatment and care of the patients at issue." *Id.* ¶ 38.

On February 24, 2021, the Ad Hoc Committee recommended that the decision to terminate Gruessner's privileges be affirmed. In doing so, the Ad Hoc Committee "commented adversely on [Plaintiff's] involvement in support of [] Gruessner" and declined to credit Plaintiff's written statement. *Id.* ¶ 40.

Plaintiff claims that "John Doe," an unknown senior official at SUNY Downstate, notified Dewan (SUNY Upstate's interim president) and Cooney of Plaintiff's involvement in the Gruessner matter. Cooney's reaction to this information was "palpably negative." ECF No. 1 ¶ 42. On April 5, 2021, Plaintiff met with Cooney and a representative from human resources. Cooney notified Plaintiff that he was "terminated effective immediately." *Id.* ¶ 45. During that meeting, Cooney implied that the termination decision had come from Dewan and was taken "because of his participation" in the Gruessner matter. *Id.* ¶ 46. Although Cooney alluded to Plaintiff's "unprofessional conduct" and "performance," he admitted that it would be "awkward

---

[3] The Named Defendants included a copy of Plaintiff's written statement with their motion to dismiss. *See* ECF No. 13-1 at 28-30. Again, because the substance of that statement does not bear materially on the Court's resolution of the motion, the Court need not decide whether it would be appropriate to consider it on a motion to dismiss.

4

to tell [Plaintiff] the *real* reasons" for his termination. *Id.* ¶ 47. Cooney handed Plaintiff a termination letter signed by Dewan, and subsequently had Plaintiff escorted from campus.

In January 2022, Plaintiff brought the present action. He raises two claims. First, pursuant to 42 U.S.C. § 1983, Plaintiff brings a claim against Dewan (in his official and individual capacities), Cooney (in his official and individual capacities), and SUNY for First Amendment retaliation. ECF No. 1 at 13-14. Second, under New York law, Plaintiff brings a claim against Dewan, Cooney, and John Doe, for "intentional tort," based on their conduct in causing the termination of his employment. *Id.* at 15.

## DISCUSSION

In support of their motion, Defendants make five arguments. First, any claims for damages against SUNY, or Cooney and Dewan in their official capacities, are not recoverable in connection with Plaintiff's Section 1983 claim. Second, Plaintiff has not sufficiently alleged any claim against "John Doe." Third, Plaintiff's written statement is not protected speech. Fourth, Cooney and Dewan, in their individual capacities, are entitled to qualified immunity on the Section 1983 claim. Fifth, Plaintiff fails to state a claim for "intentional tort" under New York law.

**I.   Whether Plaintiff can Recover Monetary Damages against SUNY and Dewan and Cooney (in their Official Capacities)**

Defendants argue that, with respect to the Section 1983 claim, Plaintiff cannot recover damages against SUNY, or Dewan and Cooney in their official capacities. That may be accurate, *see, e.g.*, *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3695, 2014 WL 2863224, at *8 (E.D.N.Y. June 19, 2014), but it is also immaterial. As Plaintiff's complaint makes clear, he is not seeking monetary damages against SUNY in conjunction with his Section 1983 claim. *See* ECF No. 1 at 15-16. And against Dewan and Cooney, Plaintiff seeks only monetary damages against them "in their individual capacities," not in their official capacities. *Id.* at 16. Plaintiff requests

5

only declaratory and injunctive relief against Dewan and Cooney in their official capacities. *See id.* at 15-16. Accordingly, this argument does not merit relief.

Nevertheless, Plaintiff concedes, and the Court agrees, that no Section 1983 claim, insofar as it seeks declaratory or injunctive relief, may proceed against SUNY. *See* ECF No. 17 at 6 n.1. SUNY is not a "person" subject to suit under Section 1983. *See Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 127 (N.D.N.Y. 2019). The claim against SUNY is therefore dismissed with prejudice.

## II. Whether the Complaint States a Claim against John Doe

The Court declines to address the Named Defendants' arguments that the complaint fails to state any cognizable claim against John Doe. The Named Defendants' counsel does not purport to represent John Doe, and the Named Defendants have articulated no basis that would allow them to raise such issues on John Doe's behalf. *See O'Neal v. Middletown Twp.*, No. 18-CV-5269, 2019 WL 77066, at *1 n.1 (D.N.J. Jan. 2, 2019); *see also Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) ("[C]ourts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials.").

## III. Whether Plaintiff's Written Statement is Protected Speech

First Amendment retaliation claims brought by public employees against their public employers are analyzed under what is known as the "*Pickering* test," after the seminal Supreme Court case. *Locurto v. Giuliani*, 447 F.3d 159, 172 (2d Cir. 2006); *see also Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563 (1968). "The *Pickering* test [] poses two questions[:] . . . (1) whether the employee's speech as a citizen was on a matter of public concern, and if so, (2) whether the employer has shown that the employee's interest in expressing himself on that matter is outweighed by injury that the speech could cause to the employer's

operations." *Piscottano v. Murphy*, 511 F.3d 247, 269-70 (2d Cir. 2007); *see also Specht v. City of New York*, 15 F.4th 594, 600 (2d Cir. 2021) ("The speech of a public employee is protected by the First Amendment"—and thus may form the basis of a retaliation claim—"when the employee speaks as a citizen on a matter of public concern, rather than pursuant to his employment responsibilities.").

Focusing on the first prong of the *Pickering* test, the Named Defendants argue that "Plaintiff's speech [did] not address a matter of public concern" and therefore "is not protected speech under the First Amendment." ECF No. 13-2 at 15.

Absent further briefing, the Court is not yet convinced that the public concern requirement is a necessary element of Plaintiff's claim, to the extent Plaintiff's speech can be characterized as "off-duty" and "non-work-related." *Locurto*, 447 F.3d at 175. As a result, the Named Defendants' motion with respect to this argument is denied without prejudice.

In *Pickering*, the Supreme Court recognized that the State, in its capacity as employer, has a valid interest "in regulating the speech of its employees" that differs "significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering*, 391 U.S. at 568. The basic aim of *Pickering* was to balance "the interests of the [public employee], as a citizen, in commenting upon matters of public concern," and the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* The "public concern" requirement furthers this end: it ensures that public employees retain their rights to "participate in public affairs," while giving "government officials . . . wide latitude in managing their offices[] without intrusive oversight by the judiciary." *Connick*, 461 U.S. at 144-46. In *Connick v. Myers*, 461 U.S. 138 (1983), the Supreme Court wrote, "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon

7

matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147.

Imposition of the public concern requirement is reasonable in the context of a public employee's "job-related speech," since it is in that context that the competing interests—the public employee's First Amendment rights and the State's interest as an employer—are in play and potentially in conflict. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995). But the rationale for the requirement breaks down when the State attempts to regulate an employee's "off-duty, non-work-related speech." *Locurto*, 447 F.3d at 175. In that circumstance, where the State's interest as an employer dissipates, there is no longer any basis to treat the public employee differently than the "citizenry in general" with respect to his First Amendment rights. *Pickering*, 391 U.S. at 568.

For this reason, in *Locurto v. Giuliani*, 447 F.3d 159 (2d Cir. 2006), the Second Circuit questioned whether the public concern requirement applies to "off-duty, non-work-related speech." *Locurto*, 447 F.3d at 175. In dicta, the court stated that "[t]he public concern inquiry, developed within the context of on-the-job expressive activity, was intended to provide heightened protection to workplace speech that was close to the First Amendment's core, that is, speech that constituted the essence of self-government." *Locurto*, 447 F.3d at 174 (internal quotation marks omitted). That test "does not apply neatly as a *threshold* test for expression unrelated to Government employment," however. *Id.*; *see also Berger v. Battaglia*, 779 F.2d 992, 998 (4th Cir. 1985) ("*Pickering*, its antecedents, and its progeny . . . make it plain that the 'public concern' . . . inquiry is better designed—and more concerned—to identify a narrow spectrum of employee speech that is not entitled even to qualified protection than it is to set outer limits on all that is.").

This is because "mechanically applying a categorical public concern test to off-duty speech unrelated to Government employment would lead to the somewhat anomalous result that the Government would have far less latitude to dismiss an employee for a public display of racism involving public concerns than it has for, say, speech that was uttered in the privacy of the employee's bedroom but was not on a matter of public concern." *Locurto*, 447 F.3d at 174-75. Other courts, including the Supreme Court, have raised similar questions. *See, e.g.*, *Nat'l Treasury*, 513 U.S. at 480 (O'Connor, J., concurring in judgment in part and dissenting in part); *Dible v. City of Chandler*, 515 F.3d 918, 927 (9th Cir. 2008); *Flanagan v. Munger*, 890 F.2d 1557, 1563-64 (10th Cir. 1989); *Rothschild v. Bd. of Educ. of City of Buffalo*, 778 F. Supp. 642, 653-54 (W.D.N.Y. 1991).

The *Locurto* court suggested that a different standard ought to apply in such circumstances: "[i]t is more sensible . . . to treat off-duty, non-work-related speech as presumptively entitled to First Amendment protection regardless of whether, as a threshold matter, it may be characterized as speech on a matter of public concern." *Locurto*, 447 F.3d at 175. Under that standard, "the closeness of a Government employee's off-duty, non-work-related speech to the heart of the First Amendment [] becomes relevant as part of the *Pickering* balancing test, to be weighed against the Government's interest only *after* the Government meets its burden of identifying a reasonable potential for disruption." *Id.* This standard finds some support in Supreme Court precedent. *See City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004) (stating that, outside of the "category" of job-related speech, the First Amendment protects the right of "government employees [to] speak or write on their own time on topics unrelated to their employee," absent "some governmental justification far stronger than mere speculation in regulating it" (internal quotation marks omitted)); *see also Pereira v. Comm'r of Soc. Servs.*, 733 N.E.2d 112, 120 (Mass. 2000) ("There

9

is . . . considerable force to the argument that courts should proceed to the balancing prong of the *Pickering* test when a public employee speaks away from the workplace, and does not comment on internal office affairs or on her status as an employee, whether or not her speech is on a matter of public concern.").

In short, *Locurto* suggests that a district court should analyze, as a threshold matter, whether the public employee's speech is "off-duty" and "non-work-related." If the employee's speech is rendered in an official capacity or is related to his employment, the "public concern" requirement should be enforced. *See Locurto*, 447 F.3d at 174-75. If not, the public employee's speech is "presumptively entitled to First Amendment protection regardless of whether, as a threshold matter, it may be characterized as speech on a matter of public concern," and it is the employer that bears the initial burden of "identifying a reasonable potential for disruption" which would justify regulation of the employee's speech. *Id.* at 175; *see also Roe*, 543 U.S. at 81-82.

Unfortunately, in their current briefing, the Named Defendants do not substantively analyze (a) whether Plaintiff was "on-duty" when he proffered his written statement, or (b) whether Plaintiff's written statement was related to his employment. These are not questions that the Court is prepared to answer *sua sponte*, without the benefit of additional briefing by the parties.[4] And, because it cannot answer those questions at the present juncture, the Court is unable to determine whether it would be appropriate to subject Plaintiff's retaliation claim to the public concern requirement. *See id.*

---

[4] The Court highlights two issues in particular that may merit further consideration by the parties. First, although Plaintiff does not allege that he issued his written statement in his official capacity, *see* ECF No. 1 ¶¶ 34-37, the written statement addresses a subject matter that is related to Plaintiff's employment, and Plaintiff explicitly connects his opinion to his current role at SUNY Upstate. *See* ECF No. 13-1 at 28 (discussing his experience and highlighting his current role at SUNY Upstate). Do these facts render Plaintiff's statement "on-duty" or "work-related" speech? Second, while SUNY Upstate and SUNY Downstate are different institutions, state law indicates that they are not legally distinct entities. *See* N.Y. Educ. L. § 352(3) ("The state university shall consist of," *inter alia*, "downstate medical center" and "upstate medical center"). Should Plaintiff's statement be deemed "work-related" insofar as he is commenting on internal disciplinary matters within the SUNY system?

Consequently, the Court must deny without prejudice the Named Defendants' motion with respect to its argument on the public concern requirement—as well as to the related claims of qualified immunity for Dewan and Cooney. The Named Defendants are free to renew their motion to dismiss on these grounds, so long as their briefing substantively addresses the issues discussed above.[5]

### IV. Whether Plaintiff has Sufficiently Stated an Intentional Tort Claim

Finally, the Named Defendants contend that Plaintiff's intentional tort claim fails because, *inter alia*, Plaintiff has failed to plead special damages. The Court agrees.

An essential element of a claim for intentional tort under New York law is "special damages." *Chen v. United States*, 854 F.2d 622, 627 (2d Cir. 1988). Under Federal Rule of Civil Procedure 9(g), "[i]f an item of special damage is claimed, it must be specifically stated." Where, as here, "special damage is essential to the cause of action," the special damage "must be alleged with greater specificity, and at least with sufficient detail to inform the court of the substance of the claim." *Barrett v. U.S. Banknote Corp.*, No. 7420, 1992 WL 232055, at *8 (S.D.N.Y. Sept. 2, 1992) (internal quotation marks omitted). Courts have held that "a damage allegation consisting entirely of round figures and lump sums, without any explanation of how plaintiff arrived at such figures," is insufficient to plead special damages. *McKenzie v. Dow Jones & Co.*, No. 08-CV-3622, 2008 WL 2856337, at *4 (S.D.N.Y. July 22, 2008) (internal quotation marks omitted); *see also Solar Travel Corp. v. Nachtomi*, No. 00-CV-3564, 2001 WL 641151, at *9 (S.D.N.Y. June 8, 2001) (collecting cases).

---

[5] Separately, Plaintiff makes the alternative argument that the public concern requirement does not apply where a public employee provides "testimony in an administrative proceeding." ECF No. 17 at 15. At this point, Plaintiff has not convinced the Court that this rule—which is usually applied in the context of a judicial, quasi-judicial, legislative, or other official or public proceeding—ought to apply to the apparently private, internal disciplinary review in which he proffered his written statement. *See, e.g., Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121 (2d Cir. 2005). If the Named Defendants renew their motion to dismiss, Plaintiff may re-raise this argument, but he should be prepared to develop this argument further and provide more directly applicable case law in support.

In this case, Plaintiff alleges that Dewan, Cooney, and John Doe, through their wrongful conduct, caused him to "suffer[] special damages, including the loss of income, loss of productivity, loss of future earnings, and damage to his reputation." ECF No. 1 ¶ 72. Plaintiff does not identify "any specific amount of monetary loss" related to each of these categories, however. *Watkins v. Town of Webster*, No. 21-CV-6233, 2022 WL 827824, at *22 (W.D.N.Y. Mar. 17, 2022). In his relief clause, Plaintiff attempts to offer some valuation, requesting "not less than" $2 million in damages on his intentional tort claim. ECF No. 1 at 16. But without further explanation or itemization, this too is insufficient. *See Bilinski v. Keith Haring Foundation, Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. 2015) ("Pleading damages as a round number with no attempt at itemization alleges general rather than special damages."); *Gray v. Grove Mfg. Co.*, 971 F. Supp. 78, 81 (E.D.N.Y. 1997) (allegation of lost "employment, wages and benefits" with a "lump sum damages amount" of $15 million was insufficient to plead special damages).

In his opposition memorandum, Plaintiff contends that his income losses can be identified with sufficient particularity by reference to his original employment agreement, which the Named Defendants attached to their motion. *See* ECF No. 17 at 24-25. But the original employment agreement cannot cure the complaint's insufficiencies with respect to income losses because Plaintiff himself alleges that some of the original employment agreement's terms, including salary, were superseded by the December 2017 Retention Letter. ECF No. 1 ¶¶ 19, 23. The terms of the Retention Letter are neither in Plaintiff's complaint nor in the materials submitted by the Named Defendants. Furthermore, the original employment agreement fails to shed any light on the value of the damages attributable to Plaintiff's other categories of loss, including "loss of future earnings," "loss of productivity," and "damage to his reputation." *Id.* ¶ 72. Nor does the original employment agreement clarify how Plaintiff's $2 million in damages is allocated.

Therefore, Plaintiff's intentional tort claim must be dismissed for failure to adequately plead special damages.

## CONCLUSION

For the reasons discussed above, the Named Defendants' motion to dismiss (ECF No. 13) is GRANTED IN PART and DENIED IN PART, in that Plaintiff's Section 1983 claim against SUNY, and his intentional tort claim against Dewan and Cooney, are dismissed.  The motion is otherwise denied to the extent stated herein.  The Clerk of Court is directed to terminate SUNY as a defendant.  Dewan and Cooney shall answer or otherwise respond to Plaintiff's complaint within 30 days of entry of this Order.

IT IS SO ORDERED.

Dated: October 24, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York