UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK LAFTAVI,

                                    Plaintiff,

                                                                                                   Case # 22-CV-6002-FPG

v.

                                                                                                     DECISION AND ORDER

STATE UNIVERSITY OF NEW YORK, et al.,

                                    Defendants.

## INTRODUCTION

Plaintiff Mark Laftavi alleges that Defendants Mantosh Dewan, Robert Cooney, and "John Doe" conspired with his employer, the State University of New York ("SUNY"), to terminate his employment from SUNY Upstate Medical University ("SUNY Upstate") in retaliation for his protected speech. *See* ECF No. 1. In his complaint, Plaintiff raised two claims. First, pursuant to 42 U.S.C. § 1983, Plaintiff brought a claim against Dewan (in his official and individual capacities), Cooney (in his official and individual capacities), and SUNY for First Amendment retaliation. *Id.* at 13-14. Second, under New York law, Plaintiff brought a claim against Dewan, Cooney, and John Doe for "intentional tort," based on their conduct in causing the termination of his employment. *Id.* at 15. On October 24, 2022, the Court granted in part the Named Defendants'[1] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Laftavi v. State Univ. of N.Y.*, No. 22-CV-6002, 2022 WL 13947916 (W.D.N.Y. Oct. 24, 2022). The Court dismissed "Plaintiff's Section 1983 claim against SUNY[] and his intentional tort claim against Dewan and Cooney." *Id.* at *7. The Court denied without prejudice the Named Defendants' motion with

---

[1] The "Named Defendants" are Dewan, Cooney, and SUNY.

respect to the Section 1983 claim against Dewan and Cooney, permitting them to "renew their motion to dismiss." *Id.* at *6. The Individual Defendants[2] have now filed a renewed motion, seeking dismissal of the Section 1983 claim. ECF No. 20. Plaintiff opposes the motion, ECF No. 23, and the Individual Defendants have filed their reply. ECF No. 24. For the following reasons, the Individual Defendants' motion is DENIED.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## BACKGROUND

The following facts are taken from the complaint, unless otherwise noted.[3] Plaintiff is an "internationally renowned transplant and general surgeon." ECF No. 1 ¶ 5. At some unidentified point, Rainer W.G. Gruessner, Chief of the Department of Transplant Surgery at SUNY Upstate, recruited Plaintiff to join SUNY Upstate. At that time, SUNY Upstate's transplant program had "below average outcomes." *Id.* ¶ 12. In February 2016, Plaintiff began working for SUNY Upstate

---

[2] The "Individual Defendants" are Dewan and Cooney, in their official and individual capacities.

[3] This section is derived from the Court's October 24, 2022 Decision & Order. *See Laftavi*, 2022 WL 13947916, at *1-2.

and University Surgical Associates, LLP ("USA, LLP") as a transplant surgeon and "Director of Pancreas Transplant Program." *Id.* ¶ 10.  Plaintiff's employment was governed by a six-year employment contract.  *Id.*  Cooney—a professor at SUNY Upstate and the managing partner of USA, LLP—executed Plaintiff's employment contract on behalf of SUNY Upstate and USA, LLP. *Id.*  Plaintiff alleges that he "outperformed expectations" during his first year of employment and helped to rehabilitate SUNY Upstate's transplant program.  *Id.* ¶ 13.

In May 2017, Gruessner left SUNY Upstate and accepted a position at SUNY Downstate Health Sciences University ("SUNY Downstate"), which had "one of the worst [transplant programs] in the country."  ECF No. 1 ¶ 14.  Plaintiff was elevated to the role of Interim Chief of Transplant Surgery upon Gruessner's departure.  Soon thereafter, however, Gruessner began encouraging Plaintiff to "join him at SUNY Downstate to replicate the success they shared" at SUNY Upstate.  *Id.* ¶ 15.  In October 2017, SUNY Downstate offered Plaintiff the position of Director of Pancreas Transplant Surgery, which Plaintiff accepted.  On October 31, 2017, Plaintiff submitted a notice of resignation to Cooney.

Cooney did not react well to Plaintiff's resignation.  Fearful that "without [Plaintiff's] skill and efforts," the transplant program at SUNY Upstate would "begin to fail again," Cooney threatened Plaintiff with legal action and penalties if he broke his employment contract.  *Id.* ¶ 17. Cooney was also "infuriated" with Gruessner, believing that Gruessner was interfering with SUNY Upstate's transplant program.  *Id.* ¶ 18.  In response to Gruessner's overtures, officials at SUNY Upstate, on the one hand, offered additional monetary and other incentives to Plaintiff, and on the other hand, convinced SUNY Downstate's president to rescind Plaintiff's new employment offer. This strategy succeeded: SUNY Downstate rescinded its offer, and Plaintiff accepted the additional incentives and continued his employment at SUNY Upstate.   The new incentives were

memorialized in a December 2017 "Retention Letter." *Id.* ¶ 19. Over the next several years, Plaintiff continued to develop and strengthen SUNY Upstate's transplant program.

While working at SUNY Downstate, Gruessner came under "increased resistance and intense scrutiny" by senior administrators for publicly bringing to light "institutional failures [at SUNY Downstate] that threatened the health and safety of its patients." ECF No. 1 ¶ 28. After further conflict between Gruessner and SUNY Downstate, SUNY Downstate ultimately retaliated against him by revoking his medical staff privileges. The stated grounds for the revocation were concerns over Gruessner's "patient care" and "allegations of disruptive behavior, comportment and unprofessionalism." *Id.* ¶ 32. Gruessner internally appealed that decision to an "Ad Hoc Committee" of SUNY Downstate physicians and surgeons.

To challenge the accusations of substandard medical treatment, Gruessner solicited opinions from "several leading transplant surgeons." *Id.* ¶ 34. At Gruessner's request, Plaintiff provided a written statement to the Ad Hoc Committee, in which he "gave his independent evaluation as to whether [] Gruessner met the standard of care in those cases isolated by SUNY Downstate for which [] Gruessner stood accused."[4] *Id.* ¶ 37. Plaintiff's statement was "supportive of [] Gruessner's treatment and care of the patients at issue." *Id.* ¶ 38.

On February 24, 2021, the Ad Hoc Committee recommended that the decision to terminate Gruessner's privileges be affirmed. In doing so, the Ad Hoc Committee "commented adversely on [Plaintiff's] involvement in support of [] Gruessner" and declined to credit Plaintiff's written statement. *Id.* ¶ 40.

---

[4] The Individual Defendants included a copy of Plaintiff's written statement with their renewed motion to dismiss. *See* ECF No. 20-1 at 8-10. The Court considers the written statement because the complaint "relies heavily upon [the written statement's] terms and effect, thereby rendering the document integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also* ECF No. 1 ¶¶ 36, 38, 55, 59. Plaintiff does not raise any objection to its consideration. *See* ECF No. 22.

Plaintiff claims that "John Doe," an unknown senior official at SUNY Downstate, notified Dewan (SUNY Upstate's interim president) and Cooney of Plaintiff's involvement in the Gruessner matter. Cooney's reaction to this information was "palpably negative." ECF No. 1 ¶ 42. On April 5, 2021, Plaintiff met with Cooney and a representative from human resources. Cooney notified Plaintiff that he was "terminated effective immediately." *Id.* ¶ 45. During that meeting, Cooney implied that the termination decision had come from Dewan and was taken "because of his participation" in the Gruessner matter. *Id.* ¶ 46. Although Cooney alluded to Plaintiff's "unprofessional conduct" and "performance," he admitted that it would be "awkward to tell [Plaintiff] the *real* reasons" for his termination. *Id.* ¶ 47. Cooney handed Plaintiff a termination letter signed by Dewan, and subsequently had Plaintiff escorted from campus. In January 2022, Plaintiff brought the present action.

## DISCUSSION

The central issue in the parties' pre-answer motion practice has been whether Plaintiff's written statement to the Ad Hoc Committee constitutes speech "on a matter of public concern," such that it receives protection under the rubric of *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968). "The *Pickering* test [] poses two questions[:] . . . (1) whether the employee's speech as a citizen was on a matter of public concern, and if so, (2) whether the employer has shown that the employee's interest in expressing himself on that matter is outweighed by injury that the speech could cause to the employer's operations." *Piscottano v. Murphy*, 511 F.3d 247, 269-70 (2d Cir. 2007).

The first prong has been described as a "threshold inquiry." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 82 (2004). As the Court noted in its prior decision, treating the public concern question as a threshold inquiry is reasonable "in the context of a public employee's job-related

speech, since it is in that context that the competing interests—the public employee's First Amendment rights and the State's interest as an employer—are in play and potentially in conflict." *Laftavi*, 2022 WL 13947916, at *4 (internal quotation marks omitted). Yet "the public concern test does not apply neatly as a *threshold* test for expression *unrelated* to Government employment," *Locurto v. Giuliani*, 447 F.3d 159, 174 (2d Cir. 2006) (emphasis added), as it "lead[s] to the somewhat anomalous result that the Government would have far *less* latitude to dismiss an employee for a *public* display of racism involving public concerns than it has for, say, speech that was uttered in the privacy of the employee's bedroom but was not on a matter of public concern." *Id.* at 174-75; *see also, e.g.*, *Dible v. City of Chandler*, 515 F.3d 918, 927 (9th Cir. 2008). For this reason, in *Locurto v. Giuliani*, 447 F.3d 159 (2d Cir. 2006), the Second Circuit questioned whether the public concern requirement applies to "off-duty, non-work-related speech," and suggested in dicta that "[i]t is more sensible . . . to treat [such] speech as presumptively entitled to First Amendment protection regardless of whether, as a threshold matter, it may be characterized as speech on a matter of public concern." *Locurto*, 447 F.3d at 175.

In their original briefing, the parties had not addressed this distinction between work-related and non-work-related speech. Because the Court was unprepared to determine *sua sponte* "(a) whether Plaintiff was 'on-duty' when he proffered his written statement, or (b) whether Plaintiff's written statement was related to his employment," *Laftavi*, 2022 WL 13947916, at *5, the Court dismissed the Named Defendants' motion without prejudice and with leave "to renew their motion . . . so long as their briefing substantively addresse[d]" these matters. *Id.* at *6.

Briefing is now complete on the Individual Defendants' renewed motion. ECF Nos. 20, 22, 23, 24. The Court appreciates the parties' analysis of the issues that the Court raised in its October 24, 2022 Decision & Order. With the benefit of that briefing, the Court concludes that

6

Plaintiff states a viable First Amendment retaliation claim, and therefore the Individual Defendants' renewed motion is denied. In reaching this conclusion, the Court will assume, without deciding, that Plaintiff's written statement is subject to the *Pickering* test.

"To make out a prima facie case of First Amendment retaliation, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022). The Individual Defendants only challenge the sufficiency of the complaint with respect to the first element. To determine whether a public employee's speech is protected, the Court must consider "(1) whether the employee spoke as a citizen rather than solely as an employee, and (2) whether he spoke on a matter of public concern." *Id.* at 83 (internal quotation marks omitted). In this case, Plaintiff has sufficiently alleged that he spoke as a citizen on a matter of public concern.

First, viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff "spoke as a citizen rather than solely as an employee." *Id.* at 82-83. Although Plaintiff referenced his current employment in his written statement, *see* ECF No. 20-1 at 8, his official job responsibilities did not require him to provide testimony on behalf of "other surgeons regarding their medical staff privileges at other hospitals." ECF No. 1 ¶ 56. He did not participate in the hearing at the behest of SUNY Upstate or the SUNY system as a whole, and he was not otherwise enlisted due to his official position at SUNY Upstate. *See Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006) (noting that speech that "owes its existence to a public employee's professional responsibilities" may be restricted under the First Amendment, as the government may exercise "employer control over what the employer itself has commissioned or created"). Rather, Dr. Gruessner invited Plaintiff to take part in the committee hearing because of Plaintiff's

7

skill, training, and experience as a transplant surgeon. *See id.* ¶¶ 34, 35, 57. Other leading transplant surgeons who were not associated with the SUNY system were also invited to participate. *See id.* ¶ 35; *cf. Montero v. City of Yonkers, New York*, 890 F.3d 386, 397 (2d Cir. 2018) (noting that "the presence or lack of a civilian analogue may be of some help in determining whether one spoke as a citizen").

The Individual Defendants' contrary arguments are unpersuasive. *See* ECF No. 22 at 17-18. While Plaintiff's employment at another SUNY institution creates a loose connection with Dr. Gruessner's proceedings at SUNY Downstate, Plaintiff's written statement was not "part-and-parcel of *his* concerns about *his* ability to properly execute *his* duties." *Montero*, 890 F.3d at 398 (emphases added); *see also* ECF No. 1 ¶¶ 37, 38, 59. That is, there is no substantive link between the revocation of Dr. Gruessner's medical privileges and Plaintiff's duties or employment at SUNY Upstate. *See* ECF No. 1 ¶¶ 55-56. Likewise, the mere fact that Plaintiff's statement concerns the same subject matter as his employment does not "transform that speech into employee . . . speech." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

In short, Plaintiff's written statement was not "made as a means to fulfill or undertaken in the course of performing his responsibilities" at SUNY Upstate, and therefore "he engaged in citizen speech for purposes of the First Amendment." *Montero*, 890 F.3d at 399 (internal quotation marks omitted).

Second, the Court concludes that Plaintiff sufficiently alleged that he "spoke on a matter of public concern." *Shara*, 46 F.4th at 84. "To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* (internal quotation marks omitted). "Whether speech is on a matter of public concern is a question of law that courts decide by examining the content,

form, and context of a given statement, as revealed by the whole record." *Id.* (internal quotation marks omitted).

Certainly, the complaint sufficiently alleges that Plaintiff did not issue his written statement "as an employee upon matters only of personal interest." *Connick v. Myers*, 461 U.S. 138, 147 (1983). In his capacity as an employee of SUNY Upstate, Plaintiff had no stake in Dr. Gruessner's disciplinary proceedings. The work conditions at, and operations of, SUNY Upstate would not be affected by the termination of Dr. Gruessner's medical privileges at SUNY Downstate. Plaintiff's written statement did not relate "to [his] own situation" at SUNY Upstate, was not "personal in nature," and did not aim to protect his "own reputation." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991). From Dr. Gruessner's perspective, of course, the proceedings were very much in the nature of internal workplace dispute, and any statements he made therein might be subject to a different analysis. *See, e.g.*, *Zaky v. U.S. Veterans Admin.*, 793 F.2d 832, 839 (7th Cir. 1986) (concluding that doctor's statements "about the quality of patient care did not address a matter of public concern," where they were made "in defense of numerous complaints" and were "statements made in the context of an employee protecting his job" (internal ellipsis omitted)). But at issue here is Plaintiff's speech, not Dr. Gruessner's, and that distinction is highly relevant. *See Barzilay v. City of New York*, 610 F. Supp. 3d 544, 575 (S.D.N.Y. 2022) ("[S]tatements made regarding the same topic may constitute speech on a matter of public concern or an internal workplace grievance, depending on the content, form, and context of the speech."). Plaintiff presented his written statement as an independent expert, as did a number of other "renowned transplant surgeons" who were not affiliated with or employed by the SUNY system. ECF No. 1 ¶ 35. In presenting his opinion, Plaintiff sought to "promot[e] a sound and objective

medical review" of Dr. Gruessner's actions, *id.* ¶ 37, and was not acting to "redress his personal grievances." *Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009).

Furthermore, the content of Plaintiff's written statement "touch[ed] upon matters of public concern." *Specht v. City of New York*, 15 F.4th 594, 601 (2d Cir. 2021). In reaching this conclusion, the Court does not find salient the fact that Plaintiff's written statement pertained to Dr. Gruessner's care to "two specific patients" rather than "systemic issue[s] concerning public health," as the Individual Defendants emphasize. ECF No. 22 at 26. The Second Circuit has noted that "even isolated instances of official conduct may implicate matters of public concern." *Specht*, 15 F.4th at 601. Dr. Gruessner's decisionmaking with respect to two individual cases constitutes an issue of some public relevance in itself, since he was a physician practicing medicine at a public hospital. The competence of physicians providing services to the general public has long been viewed as a matter of public health warranting extensive regulation and oversight, rather than a strictly private matter between provider and patient. *See, e.g.*, *Dent v. State of W. Va.*, 129 U.S. 114, 122-23 (1889); *People v. Cole*, 219 N.Y. 98, 101 (1916) ("Statutes designed to protect public health and general welfare by regulating the practice of medicine in some part or all of the territory constituting this state have been enacted from time to time since 1760."). The same applies to "[h]ospital[s] and related services," which are of "vital concern to the public health." N.Y. Pub. Health L. § 2800. In the interest of public health, New York has gone so far as to change the common-law rule and limit hospitals' ability to revoke medical privileges. *See Fried v. Straussman*, 41 N.Y.2d 376, 377 (1977). Under Public Health Law § 2801-b(1), it is an improper practice for the governing body of a hospital to terminate a physician's medical privileges for reasons "unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant." A physician can obtain review of an allegedly

improper termination by filing a complaint with the Public Health Council.  N.Y. Pub. Health L. § 2801-b(2).

Because New York recognizes that issues of physician competence and hospital practices, like medical privileges, are of concern to the general public, state law mandates that data related to those issues be disseminated to the general public.  While the process before the Public Health Council is treated as confidential, *id.* § 2801-b(3), the loss of hospital privileges after due process is collected and disseminated to the public, *id.* § 2995-a(1)(d), so as to increase availability of useful information "to patients" and improve "the quality of health care in th[e] state."  *Id.* § 2995(1)(a).  Likewise, information about physicians' convictions, regulatory actions, and malpractice judgments and settlements is collected and disseminated to the public.  *Id.* § 2995-a(1)(a), (b), (e).  Much of this information relates to individual cases, but state law reasonably recognizes that it is through individual cases that the general public can assess the quality of care that physicians and hospitals provide—a matter of obvious public import.  Thus, it cannot be said Dr. Gruessner's care with respect to the two patients in dispute, or the retention of his medical privileges at a public hospital, is a wholly "internal" or "private" personnel matter, no different from the discipline of a municipal landscaper for his lackadaisical approach to the courthouse lawn.

To be sure, Plaintiff did not express his opinion on Dr. Gruessner's care in a public forum, but in the context of an internal disciplinary proceeding.  *See* ECF No. 1 ¶¶ 33, 36.  Nevertheless, "[t]he private nature of the statement does not . . . vitiate the status of the statement as addressing a matter of public concern," *Rankin v. McPherson*, 483 U.S. 378, 386 n.11 (1987), and Plaintiff sufficiently alleges that this ostensibly discrete, internal proceeding was, in fact, part of an ongoing, public clash between Dr. Gruessner and SUNY Downstate that had received significant media attention.  *See* ECF No. 1 ¶¶ 28-32.  The proceeding itself was alleged to be an instance of

11

retaliation by SUNY Downstate for Dr. Gruessner's complaints about patient care at SUNY Downstate. Given that alleged context, Plaintiff's written statement cannot be reduced to mere opinion about an "internal office dispute." ECF No. 22 at 23. Rather, Plaintiff's support for Dr. Gruessner in the context of the disciplinary proceedings implicitly provided support for Dr. Gruessner's broader, public criticisms of SUNY Downstate, his claims of institutional failures that threatened public health, and his accusations of retaliation. *See* ECF No. 1 ¶¶ 28, 37-39; *see, e.g.*, *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 165 (2d Cir. 2006) (athletic director's private letter to superintendent and school board addressed matter of public concern because of, *inter alia*, the community's interest in the subject matter and the fact that the letter "was made against [the] backdrop of existing community debate"). In other words, while the immediate context for Plaintiff's written statement may have been a discrete issue regarding Dr. Gruessner's care of two patients, within its broader context, the written statement "implicate[d] matters of public importance," including "governmental malfeasance" and public health. *Specht*, 15 F.4th at 601-02. For these reasons, the Court concludes that Plaintiff's written statement "touch[ed] on matters of public importance." *Id.*

In sum, Plaintiff has sufficiently alleged protected speech for purposes of his First Amendment retaliation, and therefore the Individual Defendants' renewed motion must be denied.[5]

---

[5] Although the Court permitted the Individual Defendants to raise their "claims of qualified immunity for Dewan and Cooney" in their renewed motion, *Laftavi*, 2022 WL 13947916, at *6, they chose not to do so, *see generally* ECF Nos. 22, 24, and the Court declines to address the matter *sua sponte*. The Court does note that, even if Dewan and Cooney were entitled to qualified immunity in their individual capacities, that would not end this litigation: qualified immunity "does not bar" Plaintiff's claims for "declaratory and injunctive relief." *Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995); *see* ECF No. 1 at 15-16.

## CONCLUSION

For the reasons discussed above, the Individual Defendants' renewed motion to dismiss (ECF No. 20) is DENIED. Dewan and Cooney shall answer Plaintiff's complaint within 21 days of entry of this Order.

IT IS SO ORDERED.

Dated: August 7, 2023
       Rochester, New York

                                                 HON. FRANK P. GERACI, JR.
                                                 United States District Judge
                                                 Western District of New York