UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK LAFTAVI,

                              Plaintiff,          **DECISION AND
                                                   ORDER**
                    v.
                                                  22-CV-6002 FPG CDH
MANTOSH DEWAN, *et al.*,

                              Defendants

---

### INTRODUCTION

Plaintiff Mark Laftavi ("Plaintiff") brings this action against defendants Dr. Mantosh Dewan ("Dr. Dewan") and Dr. Robert Cooney ("Dr. Cooney") (collectively "Defendants") and John Doe[1], alleging that Plaintiff's employment by the State University of New York ("SUNY") Upstate Medical University ("SUNY Upstate") was terminated in retaliation for his protected speech. (Dkt. 1; *see also* Dkt. 19; Dkt. 25).

Plaintiff has filed a motion to reopen discovery. (Dkt. 65). Specifically, Plaintiff seeks to reopen discovery to depose two non-parties—Dr. Lawrence Chin ("Dr. Chin"), the Dean of the College of Medicine at SUNY Upstate, and Dr. Reza Saidi ("Dr. Saidi"), the Associate Director of the Transplant Clinic at SUNY Upstate. Defendants oppose Plaintiff's motion. (Dkt. 67). For the reasons that follow, Plaintiff's motion is granted.

---

[1]     John Doe is "an unknown official at SUNY Downstate Health Sciences University." (Dkt. 1 at ¶ 9; *see also* Dkt. 19 at 6).

## BACKGROUND

This case has been referred to the undersigned for all pre-trial matters excluding dispositive motions. (Dkt. 27; Dkt. 45).

Plaintiff was previously employed by SUNY Upstate as a transplant surgeon. (Dkt. 1 at ¶ 10). In December of 2020, Plaintiff provided a sworn statement in support of his former colleague, Dr. Rainer W.G. Gruessner ("Dr. Gruessner"), who, at the time, was appearing before an Ad Hoc Committee regarding the denial of his medical staff privileges at SUNY Downstate Health Sciences University. (*Id.* at ¶¶ 32-36). Plaintiff alleges that Defendants terminated his employment with SUNY Upstate upon learning of his written testimony in support of Dr. Gruessner. (*Id.* at ¶¶ 42, 45, 65).

Plaintiff commenced this action on January 3, 2022. (Dkt. 1). Defendants subsequently filed a motion to dismiss. (Dkt. 13). In a Decision and Order entered on October 24, 2022, the Court granted the motion to dismiss in part but denied the motion without prejudice with respect to Plaintiff's claim against Defendants for First Amendment retaliation pursuant to 42 U.S.C. § 1983. (Dkt. 19). Defendants then filed a second motion to dismiss Plaintiff's First Amendment retaliation claim. (Dkt. 20). The Court denied this motion (Dkt. 25), and Plaintiff's First Amendment retaliation claim is the only surviving claim in this action.

On September 28, 2023, the Court held a scheduling conference with the parties and entered a Scheduling Order. (Dkt. 30; Dkt. 31). The Scheduling Order set May 10, 2024, as the deadline to complete all factual discovery including depositions.

- 2 -

(Dkt. 30 at 3). However, numerous requests to extend the fact discovery deadline ensued.

First, in April of 2024, the Court granted a joint request by the parties to extend the discovery deadline until July 10, 2024. (Dkt. 34). Shortly thereafter, the Assistant Attorney General ("AAG") representing Defendants unexpectedly passed away. (Dkt. 67 at ¶ 10). Following his passing, the case was reassigned to a different AAG, who, in May of 2024, submitted a consent motion to extend the discovery deadline until October 10, 2024. (Dkt. 36). The Court granted the motion. (Dkt. 37). In August of 2024, a third AAG took over as defense counsel and submitted another consent request to extend the discovery deadline until December 9, 2024. (Dkt. 40). The Court granted this request. (Dkt. 41). In November of 2024, the Court granted yet another request by the parties for an extension of time to complete discovery, this time until February 7, 2025. (Dkt. 44).[2] Then, in January of 2025, the attorney handling this case on behalf of Plaintiff left his law firm and submitted the parties' fifth and final request to extend the discovery deadline to May 8, 2025, in order to give the attorney taking over the case time to get up to speed. (Dkt. 46). The Court again granted this request. (Dkt. 47). The current attorneys handling this case on

---

[2] This request was made by a letter motion filed by Plaintiff, stating that it was written "jointly with counsel for Defendants" and citing defense counsel's forthcoming trial as one basis for the request. (Dkt. 43). However, defense counsel now characterizes the request as having been "suggested" by Plaintiff's counsel, with defense counsel not objecting to the request. (Dkt. 67 at ¶ 12).

behalf of Plaintiff took over the matter in or around February of 2025. (Dkt. 65-2 at ¶ 4).[3]

Sometime in April of 2025, following conversations between the parties "regarding supplementing Defendants' disclosures relating to email correspondence concerning the Plaintiff, as well as his personnel file," Defendants "disclosed an additional roughly 1300 pages of email correspondence and attachments relating to Plaintiff." (Dkt. 67 at ¶ 13). This supplemental disclosure "resulted in a request to push back the Defendants' depositions," to which Defendants did not object. (*Id.* at ¶ 15). Consequently, Drs. Cooney and Dewan were not deposed until after the fact discovery deadline—on June 18 and 26, 2025, respectively. (Dkt. 65-2 at ¶ 5).

According to Plaintiff, the depositions of Drs. Cooney and Dewan revealed "information that . . . Drs. Chin and Saidi . . . likely have which is highly relevant to Plaintiff's claim that he was unlawfully terminated in retaliation for assisting Dr. Gruessner's efforts to defend the claims raised in the Ad Hoc Committee hearing against him." (Dkt. 65-1 at 7-8). With respect to Dr. Chin, Plaintiff claims that "Dr. Cooney testified that Dr. Chin was deeply involved in the decision to terminate [Plaintiff]" and that "Dr. Dewan's testimony revealed an apparent attempt by Dr. Chin . . . to 'cover his tracks' through an untraditional request to modify" Plaintiff's

---

[3]    In February of 2025, the Court also granted Defendants' consent motion to take Plaintiff's deposition after the fact discovery deadline, due to Plaintiff's planned "overseas travel to provide medical services to underprivileged communities," but otherwise left the May 8, 2025 fact discovery deadline intact. (Dkt. 48; Dkt. 49; *see* Dkt. 65-1 at 7). Plaintiff was ultimately deposed on June 23, 2025. (Dkt. 65-2 at 3 n.2).

termination notice.[4] (Dkt. 65-2 at ¶ 6). Relatedly, Plaintiff notes that Defendants (1) did not identify Dr. Chin as an individual with knowledge until their Second Amended Rule 26 Disclosures, dated June 9, 2025, and (2) did not include Dr. Chin in their response to an interrogatory asking Defendants to identify "all individuals who participated in the decision to terminate [Plaintiff's] employment." (*Id.* at ¶ 6; Dkt. 65-9 at 8). With respect to Dr. Saidi, who was "effectively [Plaintiff's] supervisor" at the time of his termination (Dkt. 65-1 at 4), Plaintiff states that Dr. Cooney's testimony confirmed that he never consulted with Dr. Saidi prior to terminating Plaintiff. (Dkt. 65-2 at ¶ 7). Thus, Plaintiff asserts, "it had become clear . . . that Dr. Saidi's testimony was also needed." (*Id.*).

In August of 2025, Plaintiff's counsel's contacted defense counsel, requesting Defendants' consent to reopen discovery for the limited purpose of deposing Drs. Chin and Saidi, but Defendants refused to consent. (*Id.* at ¶ 8). Pursuant to the undersigned's individual practices, Plaintiff submitted a letter advising the Court of the discovery dispute. (Dkt. 55). Defendants filed a responsive letter. (Dkt. 56). The Court then held a telephone discovery conference on August 20, 2025, wherein it scheduled a judicially supervised settlement conference for November 14, 2025, and held in abeyance any further litigation regarding Plaintiff's request to reopen discovery. (Dkt. 59; Dkt. 60). The settlement conference was subsequently rescheduled for December 17, 2025, due to delays in Defendants obtaining settlement

---

[4]    As alleged in Plaintiff's complaint, Dr. Cooney advised Plaintiff of his termination but provided Plaintiff with a termination notice signed by Dr. Dewan. (Dkt. 1 at ¶¶ 45-48).

authority from SUNY, SUNY Upstate's parent agency. (Dkt. 61; Dkt. 62; Dkt. 63). The settlement conference took place on December 17, 2025, and the case did not settle. (Dkt. 64).

Plaintiff filed the instant motion to reopen discovery on January 28, 2026. (Dkt. 65). Defendants filed a response opposing the motion (Dkt. 67) and Plaintiff filed a reply (Dkt. 68). The parties' motion papers largely renew the same arguments they raised when this dispute first arose in August of 2025. Defendants argue that "more than enough time" to complete discovery has passed and "a new phase [of litigation] is in order." (Dkt. 67-12 at 11). Defendants also dispute Plaintiff's stated need to depose Drs. Chin and Saidi and claim that the need to depose these individuals was foreseeable prior to Defendants' depositions. (*Id.* at 16-20). Defendants further request that should the Court grant Plaintiff's request to reopen discovery, they be permitted to depose Dr. Gruessner. (*Id.* at 20-22).

## DISCUSSION

### I.    Legal Standard

"The decision whether to reopen discovery is within a district court's discretion." *Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018). "In deciding whether to reopen discovery, courts consider whether good cause exists." *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011); *see* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "In analyzing a request to re-open discovery, courts apply the following six-part test:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the

- 6 -

moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Moroughan*, 320 F. Supp. 3d at 515. "A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." *Volpe v. Ryder*, No. 19-CV-2236 (JMA)(JMW), 2022 WL 16553231, at *2 (E.D.N.Y. Oct. 31, 2022) (quotation omitted).

## II.    Plaintiff's Motion to Reopen Discovery is Granted

Both sides analyze Plaintiff's motion to reopen discovery under the six-factor test cited above, and argue that, on balance, the factors weigh in favor of their respective positions. The Court thus considers these six factors in turn.

As to the first factor—whether trial is imminent—Defendants acknowledge that this factor weighs in Plaintiff's favor. (*See* Dkt. 67-12 at 9). A trial has not been scheduled and the parties have yet to file any dispositive motions.

Turning to the second factor—whether the request to reopen discovery is opposed—Plaintiff acknowledges that Defendants have opposed the request since Plaintiff first sought Defendants' consent in August of 2025. (*See* Dkt. 65-1 at 12). Plaintiff, however, asserts that the Court should not give great weight to Defendants' opposition because of the third factor—whether the non-moving party would be prejudiced. (*Id.*). Specifically, Plaintiff argues that "Defendants cannot in good faith point to any prejudice they would suffer by re-opening discovery for [the] very limited purpose" of deposing Dr. Chin and Dr. Saidi. (*Id.*). Defendants counter that the third

factor weighs "at least slightly" in their favor because preparing for and participating in the depositions "is itself a burden and raises the risk of giving rise to yet *more* avenues of inquiry, turning discovery into a perpetual-motion machine." (Dkt. 67-12 at 15).

The Court generally agrees with Plaintiff that the prejudice to Defendants from a limited reopening of discovery would not be significant. While reopening discovery would impose a limited burden on Defendants in having to prepare for and take part in Drs. Chin's and Saidi's depositions, these depositions—the scopes of which have already been fleshed out by the instant motion—do not appear to require extensive preparation and are capable of being completed within a reasonable amount of time. In addition, although Defendants dispute the need for their testimony, given Dr. Chin's position at SUNY Upstate and Dr. Saidi's supervision of Plaintiff at the time of his termination, both individuals are essentially "predictable fact witnesses [whose depositions are] not so prejudicial to bar the reopening of discovery." *Jacobs v. New York City Dep't of Educ.*, No. 11-CV-5058 (MKB)(RML), 2015 WL 7568642, at *4 (E.D.N.Y. Nov. 24, 2015). Further, Plaintiff has adequately addressed Defendants' concerns about spawning perpetual discovery by representing in his reply papers that "he will not be seeking additional discovery" beyond the depositions of Drs. Chin and Saidi. (*See* Dkt. 68 at 4). As set forth below, the Court will hold Plaintiff to this representation by prohibiting any further extensions of fact discovery.

Moreover, while the Court addresses Plaintiff's diligence in the context of the fourth factor, it finds that *Defendants'* diligence is relevant to the prejudice inquiry. Specifically, the Court notes that Defendants, for their part, have not been especially diligent in moving this litigation forward. They requested multiple extensions of the discovery deadline and then delayed the parties' settlement conference, in turn delaying resolution of the instant dispute which was being held in abeyance. Defendants' assertion that "a new phase" of this litigation "is in order" therefore rings somewhat hollow. Likewise, the Court agrees with Plaintiff that Defendants' request to depose Dr. Gruessner in the event the Court grants Plaintiff's motion suggests that their asserted need to move this case into a new phase is somewhat overstated. (*See id.*). In sum, the Court finds that the lack of prejudice to Defendants weighs in favor of reopening discovery.

As to the fourth factor—whether Plaintiff was diligent in obtaining discovery within the Court's deadlines—the Court finds that this factor is neutral. On the one hand, the Court finds it significant that Plaintiff did not conduct Dr. Cooney's and Dr. Dewan's depositions—*i.e.*, the events giving rise to the purported need to reopen discovery—until <u>after</u> the May 8, 2025 fact discovery deadline. Plaintiff should have reasonably anticipated that the depositions of the two named defendants in this action could open up new avenues of discovery to be explored. Under normal circumstances, Plaintiff's failure to schedule Defendants' depositions within the discovery deadline, or to request an extension thereof, would reflect a clear lack of diligence. Here, however, it appears that the belated timing of Defendants'

- 9 -

depositions was at least partly attributable to Defendants' disclosure of roughly 1,300 additional pages of documents in April of 2025, the production of which appears to have been itself held up by SUNY Upstate's need for a confidentiality stipulation. (*See* Dkt. 67 at ¶¶ 13-15; Dkt. 67-12 at 10-11, 16). Indeed, Defendants acknowledge that they did not object to Plaintiff taking their depositions after the discovery deadline "as a measure of . . . basic fairness . . . to give Plaintiff's counsel [an] opportunity to review [the] supplemental disclosures[.]" (Dkt. 67 at ¶ 15; *see also* Dkt. 67-12 at 16 (Defendants stating that they, "as a matter of fairness and civility[,] did not raise an objection when their own depositions were taken late, because some supplemental document production and the need to conclude a confidentiality stipulation ran into April")). In light of these circumstances, the Court finds that it would be unfair to hold Defendants' belated depositions entirely against Plaintiff in the context of the instant motion. Further, Plaintiff was diligent in seeking to reopen discovery once counsel determined that such a course of action was warranted, having promptly sought consent from opposing counsel and, upon failing to obtain such consent, promptly brought the dispute to the Court's attention.

As to the fifth factor—the foreseeability of the need for additional discovery within the time for discovery allowed by the Court—this factor arguably weighs in favor of denying Plaintiff's motion. Broadly speaking, the parties had more than 19 months to conduct discovery on Plaintiff's single surviving claim, and Drs. Chin and Saidi were not unknown to Plaintiff. But as a practical matter, it is evident that the change in Plaintiff's counsel around February of 2025 precipitated a flurry of

discovery just before the May 8, 2025 deadline. Moreover, while Defendants argue that Plaintiff had "constructive notice" of Drs. Chin's and Saidi's roles in his termination (Dkt. 67-12 at 14, 16), Plaintiff has explained that the potential significance of their testimony was not fully clear until after discovery had closed. (*See* Dkt. 65-1 at 19-21); *see also Dawson v. Sec. Servs. of Connecticut, Inc.*, No. 3:20-CV-1310-SVN, 2022 WL 204554, at *5 (D. Conn. Jan. 24, 2022) (finding this factor weighed in favor of reopening discovery where "it was not clear that Defendant would have needed to depose [the witness] until after the deadline for doing so had passed").

Turning to the sixth and final factor—the likelihood that the discovery will lead to relevant evidence—this factor weighs in Plaintiff's favor. Defendants cannot genuinely dispute that deposing Dr. Chin is likely to lead to relevant evidence, given that they have identified Dr. Chin as an individual likely to have discoverable information in their Second Amended Rule 26 disclosures. (*See* Dkt. 65-8 at 5).[5] And while the Court finds Plaintiff's explanation of Dr. Saidi's anticipated testimony somewhat speculative, it does appear that Dr. Saidi, as Plaintiff's supervisor at the time of his termination, can provide testimony going to the propriety of Defendants' motivation for terminating Plaintiff. (*See* Dkt. 68 at 9-10); *see also Barzilay v. City of N.Y.*, 610 F. Supp. 3d 544, 589 n.6 (S.D.N.Y. 2022) (noting that a plaintiff alleging First Amendment retaliation can "show that the asserted non-discriminatory reason

---

[5]　To the extent the parties dispute whether Defendants appropriately identified Dr. Chin as a potential witness under Rule 26(a) or (e), that issue is not before the Court and the Court accordingly makes no determination thereon.

. . . is being offered only as a post-hoc justification for action that would not have been taken but for the First Amendment protected activity").

Defendants argue that "[e]ven to the extent that Chin or Saidi have discoverable evidence," the Court should not reopen discovery because their testimony "would be cumulative or duplicative of information already gleaned through prior discovery." (Dkt. 67-12 at 18). But generally, discovery is only limited when it would be *unreasonably* cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The Court does not find that the depositions of Drs. Chin and Saidi would be unreasonably cumulative or duplicative. The Court also notes that the cases Defendants cite on this point involved proposed depositions that would have exceeded the ten-deposition limit imposed by Rule 30(a)(2)(A)(i)—an issue that naturally raises additional concerns about unreasonably cumulative or duplicative discovery and which has not been raised here. (*See* Dkt. 67-12 at 18) (citing *Snoussi v. Bivona*, No. 05 CV 3133 RJD LB, 2011 WL 6761068, at *1 (E.D.N.Y. Dec. 22, 2011) and *Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, No. 05 CIV. 5741 (HB), 2005 WL 3030816, at *1-2 (S.D.N.Y. Nov. 10, 2005)).

The Court concludes that the foregoing analysis supports granting Plaintiff's motion to reopen discovery. While some of the relevant factors weigh in Defendants' favor, Plaintiff has adequately identified mitigating circumstances as to those factors that tip the overall balance in favor of allowing him to depose Dr. Chin and Dr. Saidi. However, to be clear, Plaintiff's motion is granted for the sole purpose of deposing Dr. Chin and Dr. Saidi, and no further extensions of fact discovery will be permitted.

### III.    Defendants' Request to Depose Dr. Gruessner is Granted

As previously noted, Defendants request that if the Court grants Plaintiff's motion to reopen discovery, it also permit Defendants to take the deposition of Dr. Gruessner. (Dkt. 67-12 at 20). In his reply brief, Plaintiff states that he does not object to Defendants' request to depose Dr. Gruessner, and that Plaintiff's counsel, who also represents Dr. Gruessner, "will exercise best efforts to expedite [his] deposition." (Dkt. 68 at 4). The Court accordingly grants Defendants' request to depose Dr. Gruessner.

### CONCLUSION

For the reasons discussed above, Plaintiff's motion to reopen discovery (Dkt. 65) is granted. Fact discovery will be reopened for 60 days from entry of this Decision and Order solely to allow Plaintiff to depose Dr. Chin and Dr. Saidi, and to allow Defendants to depose Dr. Gruessner. The Court will not entertain any further requests to extend fact discovery. Within 30 days of entry of this Decision and Order, the parties shall submit a joint letter to the undersigned proposing new deadlines for expert discovery and dispositive motions, for the purpose of entering an amended scheduling order.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: May 7, 2026
        Rochester, New York